IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LORIE MICHELLE JACKSON, | * |
| Plaintiff | * |
| v. | * CIVIL NO. JKB-19-1693 |
| MARYLAND DEPARTMENT OF COMMERCE, | * |
| Defendant | * |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiff Lorie Jackson sued her employer, Maryland Department of Commerce ("Commerce"), alleging multiple violations of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.* Specifically, Jackson brings claims for discrimination, retaliation, and hostile work environment. Commerce moved to dismiss, or, alternatively, for summary judgment, and the matter is fully briefed. No hearing is required. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, Commerce's motion to dismiss will be granted with respect to Jackson's retaliation, hostile work environment, and § 1981 claims, and denied with respect to Jackson's Title VII discrimination claim.

I.  *Facts*[1]

Commerce hired Jackson as a contract employee around October 2006 and she has been a full employee since April 2007. (Compl. ¶ 7, ECF No. 11.) In January 2013, Jackson's job title

---

[1] As explained below, *infra* Part II, the Court will treat Commerce's motion as a motion to dismiss. Accordingly, the facts in this section are taken from the Complaint and construed in the light most favorable to Jackson. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

1

was Accounts Payable Assistant/Clerk and she was classified as an Administrative Officer I, Grade 13, Step 6, with a corresponding salary of $42,399.00. (*Id.* ¶¶ 8–9.) In April 2014, Jackson was reclassified at Grade 13, Step 7, with an annual salary of $44,476.00. (*Id.*) On January 1, 2015, Jackson was reclassified at Grade 13, Step 8, with an annual salary of $46,208.00. (*Id.*) This was her last Grade, Step, or pay increase, though she claims that other white employees have received increases since then. (*Id.* ¶¶ 8, 20.)

Around April 2015, the position above Jackson—the Accounts Payable Lead—became available. (*Id.* ¶ 9.) Jackson asked her supervisor, Will Parish, if she could be promoted to this position, but he told her that it was "being downgraded to a Grade 12 position," which was lower than her Grade 13 position. (*Id.*) In November 2015, Commerce hired a white individual, Katy Devlin, for the position. (*Id.* ¶ 11.) Devlin started at Grade 12, Step 4, and earned $39,654.00. (*Id.*) Before Devlin was hired, Jackson said she was performing the job roles of both the Accounts Payable Lead and Accounts Payable Assistant/Clerk, but her requests for "acting pay" were denied. (*Id.* ¶ 10.) Jackson states she had to train Devlin, who "lacked the experience and knowledge to perform the Accounts Payable Lead job duties." (*Id.* ¶ 11.)

During this period, Commerce also hired Rosa Harris, an African American. (*Id.* ¶ 12.) Harris was hired as the Accounts Payable Assistant/Clerk at Grade 9. (*Id.*) Because this had been Jackson's role, as a result of this hire Jackson says she was "left with no official job position or title." (*Id.*)

In May 2016, Devlin was classified as Grade 12, Step 12, with a salary of $46,705.00, which was slightly higher than Jackson's salary as a Grade 13 employee. (*Id.* ¶ 14.) In July 2016, Devlin was promoted to Working Fund Coordinator and reclassified at Grade 13. (*Id.* ¶ 15.) Jackson says this position was never publicly posted. (*Id.* ¶ 14.) After Devlin was promoted,

2

Jackson became the Accounts Payable Lead, even though her supervisor had previously failed to promote her to this Grade 12 position.[2] (*Id.* ¶ 20.)

In July 2016, Jackson was told by Parish that she was "in line to be promoted to Accounts Payable Manager" when the current holder of that position retired. (*Id.* ¶ 13.) However, when that individual retired, the position was renamed "Accounting Coordinator" and Theresa Raeke, a white woman, was promoted into that position. (*Id.* ¶ 16.) Jackson claims this position was also never posted. (*Id.*)

After these promotions, Jackson says that "all of the employees were offered cross-training so that they could qualify for different positions, except for Jackson and Harris," who were the two African Americans in the department. (*Id.* ¶ 17.) Jackson says Commerce's departments were "divided by race," and that a supervisor suggested Jackson and Harris share an office, even though there were enough offices for everyone. (*Id.* ¶ 18.)

In July 2016, Jackson filed an internal complaint which alleged that her failure to receive promotions and other opportunities was due to her race. (*Id.* ¶ 19.) In August 2016, Jackson filed a complaint with both the EEOC and MCCR.[3] (*Id.*) Jackson alleges that she faced retaliation and a hostile work environment following the filing of these complaints. (*Id.* ¶ 21.) Since filing her complaints, she says she has been "treated with hostility" by her new supervisor, Craig Svoboda, and has been asked if she is "'up for the job'" or "'having a problem doing her work.'" (*Id.* ¶ 22.) Jackson also states that she has received "unwarranted disciplinary actions and counseling for having an alleged poor attitude in meetings," which had not happened before she made her

---

[2] Jackson does not allege that she was reclassified at Grade 12 or that her salary changed when she accepted this position.
[3] Jackson does not identify these agencies, but the Court assumes Jackson refers to the Equal Employment Opportunity Commission and the Maryland Commission on Civil Rights.

3

complaints. (*Id.*) Jackson says she has always performed satisfactorily in her position while at Commerce. (*Id.*)

When Jackson returned from sick leave in December 2016, she says Svoboda told her there was "'a present for [her] in [her] office,'" which turned out to be a stack of boxes from Devlin's office. (*Id.* ¶ 23.) Jackson says that Svoboda chose to place these boxes in her office "in an attempt to humiliate, threaten and retaliate against her." (*Id.*) Jackson claims "her supervisors have made clear that they do not wish for Jackson to stay" at Commerce and told her once that she should leave. (*Id.*)

## II. *Nature of the Motions*

Commerce has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, for summary judgment pursuant to Rule 56. (Mot. Dismiss at 1, ECF No. 16.) In response, Jackson filed a declaration opposing summary judgment and arguing that summary judgment would be premature prior to discovery. (Jackson Decl. ¶ 25, ECF No. 19-1.) The Court will first determine which standard will be used to judge this motion.

Pursuant to Rule 12(d), a motion to dismiss must be converted into one for summary judgment if the moving party presents evidence outside the pleadings which the court considers. Courts have "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Sager v. Hous. Comm'n of Anne Arundel Cty.*, 855 F. Supp. 2d 524, 542 (D. Md. 2012) (quoting 5C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1366 (3d ed. 2004, 2011 Supp.)). However, the parties "must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12. Accordingly, the court may deny or defer consideration of a

4

summary judgment motion "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). "Such a request is 'broadly favored and should be liberally granted because the rule is designed to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose.'" *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 281 (4th Cir. 2013) (quoting *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010)). However, the court may deny a request for discovery "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995).

Jackson has submitted a declaration pursuant to Rule 56 in which she repeats the claims in her Complaint and argues that summary judgment is improper because Commerce "has exclusive access to all documents related to this matter." (Jackson Decl. ¶ 25.) Though Jackson has not specifically explained how these documents would create a genuine dispute of material fact, or how such documents are essential to her opposition, the Court agrees that summary judgment is premature. Without access to the documents in Commerce's possession, Jackson would be unable to contradict the arguments made in Commerce's proposed motion for summary judgment. Such documentation could raise a genuine issue of material fact about whether Commerce's purported reasons for Jackson's treatment are false. Accordingly, the Court will treat Commerce's motion as a motion to dismiss.

## III. Standard

Commerce filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Mot. Dismiss at 1.) A complaint must contain "sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. An inference of the mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. Courts must "accept the well-pled allegations of the complaint as true, . . . constru[ing] the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra*, 120 F.3d at 474. "A pleading that offers 'labels and conclusions' or . . . 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Iqbal*, 556 U.S. at 678 (alteration in original) (citation omitted) (quoting *Twombly*, 550 U.S. at 555, 557). Courts need not accept legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

Plaintiffs need not "plead facts that constitute a prima facie case in order to survive a motion to dismiss." *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Maryland*, 566 U.S. 30 (2012). However, the plaintiff must present facts that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

*IV.    Analysis*

   *A. Eleventh Amendment Immunity*

Commerce argues that Jackson's 42 U.S.C. § 1981 claims of discrimination and hostile work environment must be dismissed because Maryland is immune to such claims in federal court pursuant to the Eleventh Amendment. (Mot. Dismiss Mem. at 5, ECF No. 16-2.) It is well-established that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).

6

This immunity applies to "state agents and state instrumentalities." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). The United States Court of Appeals for the Fourth Circuit has found that Eleventh Amendment immunity applies to § 1981 claims such as the ones at issue here. *See, e.g., Huang v. Bd. of Governors of Univ. of N. Carolina*, 902 F.2d 1134, 1138 (4th Cir. 1990) (finding plaintiff "properly concedes that the Eleventh Amendment bars . . . the § 1981 and § 1983 damage claims"); *Windsor v. Bd. of Educ. of Prince George's Cty.*, Civ No. TDC-14-2287, 2016 WL 4939294, at *10, 12 (D. Md. Sept. 13, 2016) (dismissing plaintiff's § 1981 claims against state agency based on Eleventh Amendment immunity).

Jackson has not addressed this argument in her opposition brief. There is no dispute that Commerce is an arm of the State of Maryland. Jackson does not argue that Maryland has waived its immunity or that Congress has abrogated the States' immunity with respect to § 1981 claims. *See Lee-Thomas v. Prince George's Cty. Pub. Sch.*, 666 F.3d 244, 249 (4th Cir. 2012) (discussing exceptions to Eleventh Amendment immunity). Accordingly, because Commerce is immune to suit under the Eleventh Amendment for § 1981 claims, Jackson's claims under § 1981 will be dismissed.

Commerce also argues that it is immune from punitive damages pursuant to Section 5-522 of Maryland's Courts and Judicial Proceedings Article, which states that Maryland does not waive its immunity from punitive damages. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-522. In general, a party may not collect punitive damages against a government agency in a Title VII case. 42 U.S.C.A. § 1981a (Punitive damages for discriminatory conduct may not be recovered against "a government, government agency or political subdivision."); *see, e.g., Brooks v. Maryland*, Civ. No. WDQ-07-3224, 2009 WL 10682096, at *5 (D. Md. Apr. 14, 2009) ("Punitive damages under Title VII and § 1981 are not available against a government defendant.") (citing 42 U.S.C. §

1981a(b)(1)); *Finnegan v. Dep't of Pub. Safety & Corr. Servs.*, 184 F. Supp. 2d 457, 464 n.4 (D. Md. 2002) ("Plaintiff has withdrawn her claim for punitive damages because such damages are not available against a government defendant.").

Jackson does not respond to this argument, nor does she provide a statutory basis for her request for punitive damages. Accordingly, Jackson's request for punitive damages is dismissed.

### B. *Title VII*

Title VII protects employees against racial discrimination in the workplace, 42 U.S.C.A. § 2000e-2, and retaliation for making charges alleging such discrimination, 42 U.S.C.A. § 2000e-3. Jackson has alleged that she was discriminated against based on her race, that she was retaliated against for making a complaint about Commerce's discriminatory practices, and that she experienced a hostile work environment. The Court will address each count in turn.

#### 1. *Discrimination*

A claim of discrimination under Title VII lacking direct evidence requires a plaintiff demonstrate: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman*, 626 F.3d at 190. To survive a motion to dismiss, the plaintiff must allege facts that are not merely "consistent with discrimination," but rather must allege facts which "support a reasonable inference that the decisionmakers were motivated by bias." *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 586 (4th Cir. 2015) (emphasis omitted).

The presence of adverse employment action is "an absolute precondition" to an employment discrimination suit. *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985). *See also, Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999) ("Congress did not intend Title VII

to provide redress for trivial discomforts endemic to employment."). Adverse employment action under Title VII typically requires "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Boone*, 178 F.3d at 255. Jackson has established that she is a member of a protected class as an African American, *Williams v. Staples, Inc.*, 372 F.3d 662, 668 (4th Cir. 2004), and she alleges her job performance was satisfactory (Compl. ¶ 22). Jackson argues that, unlike her white colleagues, she was denied training, denied the opportunity to apply for and receive promotions, and has had her pay "frozen" through the lack of Grade and Step increases. (*Id.* ¶ 27.) The Court will address these in turn.

First, Jackson states that all the employees in her department, except for herself and Harris, were offered "cross-training" in order to allow them to "qualify for different positions." (*Id.* ¶ 17.) Jackson and Harris were the only African American employees in the department at the time the training was offered. (*Id.* ¶ 12.) Viewing the facts in a light most favorite to Jackson, refusing to offer training to African American employees which would qualify them for additional job opportunities and advancement undoubtedly qualifies as adverse employment action under Title VII. Jackson also claims that her salary, Grade, and Step were "frozen" at Grade 13, Step 8 in January 2015 while other white employees continued to receive these increases. Once again, such a practice, if true, would qualify as adverse employment action based on race.

Johnson also alleges that she was denied two promotions for positions that ultimately were filled by white women.[4] A discriminatory refusal to promote claim requires a plaintiff plead: "'(1) plaintiff is a member of a protected group; (2) plaintiff applied for the position in question; (3)

---

[4] Jackson alleges for the first time in her affidavit attached to her opposition brief that she was also denied a promotion in November 2019. (Jackson Aff. ¶ 19, ECF No 19-1.) However, "parties cannot amend their complaints through briefing." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). Therefore, this Court will not consider the November 2019 denial in evaluating Commerce's motion to dismiss.

9

plaintiff was qualified for the position; and (4) plaintiff was rejected for the position under circumstances giving rise to an inference of unlawful discrimination.'" *Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994) (quoting *McNairn v. Sullivan*, 929 F.2d 974, 977 (4th Cir. 1991)). To adequately plead an inference of discrimination, a plaintiff "need only show that the position was filled by a white applicant." *Id.*

Here, Jackson alleges that she asked to be promoted to the Accounts Payable Lead position, but that after performing the corresponding job functions for several months, Commerce hired a white individual to fill the position. (Compl. ¶¶ 10–11.) Jackson was told that she would not be selected for the position because it was a Grade 12 position, which was a Grade lower than her current position. (*Id.* ¶ 9.) Even though this position remained a Grade 12 position, Jackson alleges that Devlin received several Step increases which resulted in her being paid slightly more than Jackson. (*Id.* ¶ 14.) Devlin was then promoted to a Grade 13 position, which was not posted, "even though [Jackson] had more experience than Devlin, and had been a Grade 13" for longer than Devlin. (*Id.* ¶ 15.) Jackson also claims that she was denied a promised promotion to the position of Accounts Payable Manager, which was renamed Accounting Coordinator and given to a white woman instead. (*Id.* ¶¶ 13, 16.) She states that she had worked closely with the former holder of that position and was her "'back-up' person." (*Id.* ¶ 13.) Though Jackson did not formally apply for either position, she states that the positions were "never posted," meaning there was no opportunity to apply for them, though she had discussed each position with her supervisor. (*Id.* ¶¶ 13, 16.) The Fourth Circuit has found that "if the employer fails to make its employees aware of vacancies, the application requirement may be relaxed and the employee treated as if she had actually applied for a specific position." *Williams v. Giant Food Inc.*, 370 F.3d 423, 431 (4th Cir. 2004). Here, Jackson alleged that she had the necessary experience for these positions,

inquired into those that she knew about, yet was rejected when the positions were ultimately filled by white employees. Accordingly, the Court finds that Jackson has adequately pleaded a claim of racial discrimination.[5]

### 2. *Retaliation*

A retaliation claim pursuant to Title VII requires the plaintiff plead: "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman*, 626 F.3d at 190. Adverse employment action in the retaliation context means action which "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). The Supreme Court has made clear that the action complained of in a retaliation case must be materially adverse and represent "significant" as opposed to "trivial" harm. *Id.*; *see also Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998) (Title VII is not meant to create "a general civility code for the American workplace."). In other words, the adverse employment action complained of must rise above "petty slights, minor annoyances, and simple lack of good manners." *Id.*

Jackson filed an internal complaint which alleged racial discrimination in July 2016, and then filed her complaint with both the EEOC and MCCR in August 2016. (Compl. ¶ 19.) Making a complaint about behavior that violates Title VII—such as racial discrimination—is protected activity, 42 U.S.C.A. § 2000e-3(a). The issue here is whether Jackson has adequately pleaded that she faced adverse employment action as a result of these complaints. For the reasons explained

---

[5] The Court notes that it did not consider the external documents attached to Commerce's motion for summary judgment in making this decision. Though facts may come out in discovery that undercut Jackson's claims, at this stage the Court is to accept Jackson's allegations as true. *Ibarra*, 120 F.3d at 474.

11

below, the Court finds that Jackson failed to adequately plead causation or the existence of adverse employment action.

First, Svoboda's decision to place boxes in Jackson's office while she was out on sick leave and say they were there as a "present" to her, without more, cannot support a claim of retaliation. This single occurrence fails to rise to the level that would dissuade a reasonable employee from making a complaint, and Jackson presents nothing connecting this occurrence to the filing of her complaints several months earlier. Proximity in time between the employer's discovery of protected activity and adverse employment action may be sufficient to plead causation so long as the time between the two occurrences is "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam). The Fourth Circuit has found that even "three to four months" between protected activity and adverse employment action "is too long to establish a causal connection by temporal proximity alone." *Pascual v. Lowe's Home Centers, Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006). Here, four to five months passed between the time Jackson filed her complaint and the time the boxes were placed in her office. Accordingly, proximity in time alone cannot establish causation here, even if this occurrence was sufficiently adverse—and it was not.

Jackson also stated that she received negative feedback following the filing of her complaints and faced "unwarranted disciplinary actions and counseling for having an alleged poor attitude in meetings." (Compl. ¶ 22.) However, reprimands or poor performance reviews by themselves do not constitute materially adverse employment action in the retaliation context without additional associated harms. *See Jeffers v. Thompson*, 264 F. Supp. 2d 314, 330 (D. Md. 2003). Jackson remains employed by Commerce and has not explained how these reprimands or negative reviews have led to any impact on the terms and conditions of her employment. Nor does Jackson state specifically when these comments started—making it impossible for the Court to

determine whether they began close enough in time to the filing of her complaints to create an inference of causation—or how often they were made. Therefore, Jackson has failed to plead that these remarks by her co-workers constitute adverse action in the context of a retaliation claim.

Though Jackson alleges that she has not received any promotions in Grade, Step, or salary since making her complaints, she also states that she has not received any increase in Grade, Step, or salary since January 2015. Therefore, this freeze occurred over a year and a half *before* she filed any complaints. Jackson has presented no information to suggest that any Grade, Step, or salary decisions were made after she filed her complaints or that any such decisions were impacted by her complaints. Thus, the lack of Grade, Step, or pay increases does not support a claim for retaliation.

Because Jackson has failed to adequately plead facts supporting a retaliation claim, the Court will dismiss Jackson's claim of retaliation.

### C. Hostile Work Environment

A Title VII claim of a racially hostile work environment requires a plaintiff show: "'(1) unwelcome conduct; (2) that is based on the plaintiff's . . . [race]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 271 (4th Cir. 2015) (quoting *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011) (alteration and internal quotation marks omitted). Accordingly, even one instance can create a hostile work environment if the incident is sufficiently egregious. *Id.* at 280–81. A hostile work environment claim requires that the plaintiff subjectively perceive the environment to be hostile and that the environment is objectively hostile as judged by a "reasonable person." *Jackson v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). In determining whether a workplace is a hostile

13

environment, courts must look to "all the circumstances," which could include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. Courts should also consider the workplace environment's "effect on the employee's psychological well-being." *Id.* Workplace interactions which are merely "disrespectful, frustrating, critical, and unpleasant" do not create a hostile work environment. *Khoury v. Meserve*, 268 F. Supp. 2d 600, 614 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004) (unpublished).

While the Court did find Jackson sufficiently pleaded the existence of several instances which could support her discrimination claim, *supra* Part IV.B.1, none of the actions Jackson complains of were sufficiently pervasive, severe, or frequent to warrant a finding that her work environment was objectively hostile. *See, e.g., Perkins v. Int'l Paper Co.*, 936 F.3d 196, 209 (4th Cir. 2019) (finding that a "handful of incidents" in which African Americans were denied promotions and received less favorable treatment were insufficiently "frequent, physically threatening or humiliating" to constitute hostile work environment); *Kilby-Robb v. Spellings*, 522 F. Supp. 2d 148, 164 (D.D.C. 2007), *aff'd*, 309 F. App'x 422 (D.C. Cir. 2009) (unpublished) ("[A]lleged acts of disparate treatment cannot be transformed, without more, into a hostile work environment claim."). Jackson describes two denied promotions, the failure to receive a raise, and one lost training opportunity over the course of her employment at Commerce which spans over a decade. The Court does not find that these discrete episodes were sufficiently "frequent, physically threatening or humiliating" such that they would constitute an objectively hostile work environment.

The other behavior Jackson complains of fails to support her claim of a racially hostile work environment. Jackson states that her supervisor placed empty boxes in her office while she was out on sick leave and told her he left a "present" for her in her office when she came back. While this may have been a rude office prank, nothing suggests this occurrence was severe enough to constitute a hostile work environment—much less, that such behavior was based on Jackson's race. Jackson also states that her supervisors have "repeatedly" asked her if she is "'up for the job'" or "'having a problem doing her work'" and told her once that she should leave Commerce, even though her performance has been "satisfactory or above." (Compl. ¶¶ 22–23.) Jackson has not provided any details about how often she is asked these questions or how these questions have interfered with her job, nor has she presented any facts which suggest these statements or the "unwarranted disciplinary actions and counseling" she faced were based on her race. (*Id.* ¶ 22.) Furthermore, though these incidents describe disputes with her supervisors and unpleasant exchanges, Jackson does not plead any facts suggesting this behavior was "extreme" enough to alter "the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *see also, Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (even "callous" treatment by superiors did not create hostile work environment).

Accordingly, because Jackson has failed to plead an objectively hostile work environment, Commerce's motion to dismiss this claim will be granted.[6]

## V. *Conclusion*

---

[6] For the same reasons the Court finds that Jackson did not adequately plead a retaliation claim, it also finds that she failed to plead a retaliatory hostile work environment claim: namely, the actions Jackson complains of which occurred after she filed her complaints are not sufficiently severe or pervasive to constitute a hostile work environment, nor were they "based on" her complaints. *See Boyer-Liberto*, 786 F.3d at 271.

For the foregoing reasons, an Order shall enter granting Commerce's motion to dismiss Jackson's retaliation claims, § 1981 claims, and hostile work environment claims and denying Commerce's motion to dismiss Jackson's Title VII discrimination claim.

DATED this 3 day of February, 2020.

BY THE COURT:

/s/ James K. Bredar
James K. Bredar
Chief Judge